# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

Miroslav Kefurt, derivatively on behalf of Bremach, Inc.,

    Plaintiff

v.

Reinier Hoogenraad and Benjamin Montgomery,

    Defendants

Bremach, Inc.,

    Nominal Defendant

Case No.: 2:22-cv-01774-JAD-BNW

**Order Denying Plaintiff's Motion to Unfreeze Account and Granting Defendants' Motion to Transfer Venue**

[ECF Nos. 28, 33]

    This action involves a dispute over who is in charge of Bremach, Inc., a company formed to sell vehicles manufactured in Russia. Miroslav Kefurt, one of Bremach's directors and shareholders, brings this suit, claiming that Bremach's former president Reinier Hoogenraad and public-relations employee Benjamin Montgomery breached their fiduciary duty when they cancelled Bremach's appearance at a tradeshow for automotive dealers in March 2022—about a month after Russia invaded Ukraine—transported two of Bremach's display vehicles to California, and froze Bremach's U.S. Bank account. Kefurt now moves for an order unfreezing the account, and the defendants move to transfer this case to the Central District of California. I construe Kefurt's motion as one for a preliminary injunction, and I deny it because he has not shown that he is entitled to the relief he seeks. And I grant the defendants' motion to transfer this case because most of the witnesses and physical evidence are in California.

# Background[1]

Bremach, Inc. is in the business of selling cars manufactured by Russian company UAZ, LLC, to markets in the United States. In March 2022, Bremach was slated to promote its vehicles at the National Automotive Dealer Association Expo in Las Vegas, Nevada, and paid around $21,000 for its display.[2] Bremach's then-president Reinier "Ray" Hoogenraad had planned to transport four vehicles—two stored in California and two in Sandy Valley, Nevada—to the Expo.[3] But when Russia invaded Ukraine in February of that year, Hoogenraad and public-relations employee Benjamin Montgomery learned that UAZ had stopped manufacturing the cars and believed that international sanctions would prevent the shipment of any completed cars.[4] So Hoogenraad cancelled Bremach's appearance at the Expo, left the California cars where they were, and moved the Nevada cars to Southern California.[5] He also asked his attorney Thomas Greco, Esq., who also purported to represent Bremach, to freeze Bremach's U.S. Bank account.[6] Greco sent the bank a letter explaining that Russia ceased shipments of Bremach's inventory due to the war and international sanctions, and the account "contains dealer deposits

---

[1] These facts are summarized from Kefurt's complaint and the parties' declarations filed in support of their motions for the sole purpose of framing this convoluted dispute. They are not intended as findings of fact.

[2] ECF No. 1 at ¶¶ 9, 11.

[3] *Id.* at ¶¶ 9–10.

[4] ECF No. 36-1 at ¶¶ 2, 9–10 (declaration of Reinier Hoogenraad).

[5] *Id.* at ¶¶ 2, 11–12; ECF No. 1 at ¶ 12.

[6] ECF No. 36-1 at ¶¶ 11–12; ECF No. 28-2 at 2. Kefurt disputes that Greco represents Bremach. *See* ECF No. 1 at ¶ 21.

on contracts that are currently impossible to complete."[7]  U.S. Bank complied and froze the account.[8]

But Bremach's then-treasurer Miroslav Kefurt wasn't told that the account was frozen and started issuing refunds for deposits on the vehicles from Bremach's account.[9]  Those checks were returned.  The defendants assert that Kefurt actually believed that the company could continue taking deposits for dealership franchises despite the Russia-Ukraine conflict and wanted Bremach to attend the Expo.[10]  They also maintain that the frozen account consists of the refund from the Las Vegas Convention Center for Bremach's cancelled tradeshow appearance and that Hoogenraad froze the account to prevent Kefurt from attending the convention and taking further deposits—an action that Hoogenraad believed would be fraudulent, since Bremach's only product couldn't leave Russia.[11]  Nonetheless, when it was clear that Kefurt and Hoogenraad had colliding views about the future of the company, the two camps held competing shareholder meetings.[12]  Kefurt's meeting ousted Hoogenraad as president, while Hoogenraad's meeting temporarily suspended Bremach's business and resolved to sell its leftover vehicles and equipment, cancel its credit cards, and close its bank account.[13]

---

[7] ECF No. 28-2 at 2.

[8] ECF No. 36-1 at ¶ 11.

[9] ECF No. 1 at ¶¶ 14–15.  Greco's legal assistant avers that she sent Kefurt the letter requesting that U.S. Bank freeze Bremach's account.  ECF No. 36-2 at 2.

[10] ECF No. 36-1 at ¶ 3.

[11] *Id.* at ¶ 12.

[12] *Id.* at ¶¶ 5–6; ECF No. 1 at ¶¶ 17–18.

[13] ECF No. 1 at ¶ 18; ECF No. 36-1 at ¶ 5.  Montgomery attended Hoogenraad's meeting and also voted to cease operations.  ECF No. 36 at 7–8 (minutes from Hoogenraad's shareholder meeting).

Kefurt sues Hoogenraad and Montgomery on Bremach's behalf, alleging that they stole Bremach's display vehicles and impermissibly froze Bremach's bank account, for which Kefurt was the sole signatory. He claims that their actions breached their fiduciary duties to Bremach and constitute civil conspiracy to harm the company.[14] He also brings a conversion claim for the defendants' possession of Bremach's vehicles.[15] Kefurt now moves the court to unfreeze the bank account so that he can issue refund checks and continue to conduct Bremach business.[16] For their part, the defendants move to transfer this case to the Central District of California, arguing that they, the Bremach vehicles, and most of the relevant witnesses in this case are located in that district.[17]

**Discussion**

**A.  Kefurt has not established that he's entitled to the unfreezing of Bremach's bank account.**

In Kefurt's approximately two-page motion asking this court to unfreeze Bremach's bank account, he states that he is the sole signatory on the account but was not told that the account would be frozen.[18] He supports his motion with his declaration that Greco's statements to U.S. Bank were false, the Russian company "never stopped manufacturing" the at-issue vehicles,[19]

---

[14] ECF No. 1.  Kefurt also advances a "claim" for "Temporary Restraining Order, Preliminary Injunction, Permanent Injunction."  Those are not claims, they are remedies.

[15] *Id.*

[16] ECF No. 28.

[17] ECF No. 33.

[18] ECF No. 28.

[19] ECF No. 28-1 at ¶ 15.

4

and there are ways to distribute money held in the U.S. Bank account to Russian entities that won't be impacted by U.S. sanctions.[20]

The defendants respond that after the dueling shareholder meetings, Bremach is in limbo. While Hoogenraad maintains that he is still the majority shareholder, he asserts that "[t]here is no agreed upon slate of directors. There are several new, now contested shareholders. There are two completely different ranks of officers."[21] The defendants argue that, if the account is unfrozen and released to either side, "the other side will claim that the money will be stolen" and urges the court to deny Kefurt's motion and keep the account frozen "until this matter is resolved."[22] They also offer a declaration from Hoogenraad that a UAZ representative told him that the company ceased all manufacturing and export of the vehicles Bremach planned to sell and that the vehicles also failed a critical U.S. emissions test.[23] Hoogenraad avers that he and Montgomery "were against trying to sell a product that was no longer being manufactured and which did not comply with U.S. environmental regulations," and that is why they voted to wind down the company.[24]

Although Kefurt doesn't label his motion as such, he essentially seeks a preliminary injunction ordering the defendants to unfreeze Bremach's account.[25] A preliminary injunction is

---

[20] What Kefurt actually says about monetary distribution is that Russian "companies such as UAZ have banks in the United States so money never leaves the country, but Russians know that they have the money in US accounts." *Id.* It's unclear which of Greco's statements this representation is intended to address, but I assume Kefurt means to imply that money in the U.S. Bank account can still be distributed to entities that are owed.

[21] ECF No. 36 at 2.

[22] *Id.*

[23] ECF No. 36-1 at ¶ 2.

[24] *Id.* at ¶¶ 2, 8.

[25] To the extent that Kefurt seeks this relief under some other standard, he doesn't provide any authority explaining what that standard might be.

5

an "extraordinary" remedy "never awarded as of right."[26]  The Supreme Court clarified in *Winter v. Natural Resources Defense Council, Inc.* that, to obtain an injunction, plaintiffs "must establish that [they are] likely to succeed on the merits, that [they are] likely to suffer irreparable injury in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest."[27]  The Ninth Circuit recognizes an additional standard: if "plaintiff[s] can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips *sharply* in the plaintiffs' favor,' and the other two *Winter* factors are satisfied."[28]

Kefurt satisfies neither standard here because he has not addressed the merits of any claim.  Kefurt's thin motion merely assigns falsity to the defendants' reasons for freezing the account, insists that "Bremach's bank account should have never been frozen" and states without evidentiary support that the defendants' actions "have damaged Bremach."[29]  Kefurt does not so much as hint at the elements of any claim, nor does he show that success on any of his claims would warrant the relief he seeks.  So I deny his motion to unfreeze Bremach's U.S. Bank account.

---

[26] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

[27] *Id.* at 20.

[28] *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)).

[29] ECF No. 28 at 3 (citing ECF No. 28-1).

**B.     Transfer of venue is warranted for the convenience of the parties and witnesses.**

The defendants[30] move to transfer this case to the Central District of California under 28 U.S.C. § 1404(a). That statute authorizes courts to "transfer any civil action to any other district or division where it might have been brought" "for the convenience of parties and witnesses [and] in the interest of justice."[31] Transfer decisions lie within the district court's discretion and require an "individualized, case-by-case consideration of convenience and fairness."[32] This analysis requires the court to weigh multiple factors like:

> (1) the location where the relevant agreements were negotiated and executed, (2) which state is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.[33]

Kefurt doesn't dispute that this case could have been brought in California's Central District,[34] so I focus only on whether transferring the case would best serve the interests of justice. The defendants aver that they both reside in California, "the vast majority of the meetings between the parties, employees, dealers, and vendors were held" in California, "the primary operations of the company occurred in California," and that all of the products, equipment, and parts are located in Costa Mesa, California.[35] The defendants also declare that

---

[30] Montgomery filed this motion, which Hoogenraad later joined. *See* ECF No. 35 at 3.

[31] 28 U.S.C. § 1404(a).

[32] *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (citation omitted).

[33] *Id.* at 498–99.

[34] *See generally* ECF No. 34 (Kefurt's response brief, focusing exclusively on the convenience factors outlined *supra*).

[35] ECF No. 33 at 7–10.

7

all of their witnesses and "likely many of" Kefurt's witnesses reside and work in Southern California, and provide a list of potential witnesses alongside their California addresses.[36]

Kefurt responds with his own declaration that Bremach is incorporated in Nevada and that "no formal meetings for potential dealers were in California," noting that the only such meetings took place in Ohio and South Dakota.[37] Kefurt also says that most meetings between him and the defendants were held over the phone, and he only went to California to meet with Hoogenraad "a few times."[38] He directly contradicts the defendants' assurances that Bremach's products and equipment are located in California, stating that "all of the parts, test equipment, computers, and company documents for Bremach are located in Nevada."[39] He acknowledges that the display vehicles are in California—but only because Hoogenraad improperly took two of those vehicles from Nevada.[40] And Kefurt contests the defendants' representation that most of the witnesses are in California, claiming that he "does not know most of the people that [the defendants] listed as witnesses or their connection with the issues in this case."[41]

In the face of the parties' contradictory facts, I find the defendants' representations most persuasive. Besides Bremach's incorporation in Nevada and Kefurt's residence here,[42] all signs point to California. It appears that most of the witnesses and evidence related to this case are in

---

[36] *Id.* at 7.
[37] ECF No. 34-1 at ¶ 4.
[38] *Id.*
[39] *Id.* at ¶ 6.
[40] *Id.*
[41] ECF No. 34 at 4.
[42] Even Kefurt's domicile is apparently disputed. In Hoogenraad's declaration attached to the defendants' reply brief, he avers that Kefurt lives in California for one week per month. ECF No. 35-3 at ¶ 3.

the Central District of California. While Kefurt claims that vague car "parts" and "documents" are here, the defendants identify the specific items that remain in California, the most substantial of which are Bremach's vehicles. Even if two of those cars are in California only because of the defendants' alleged actions, any attempt to collect them or introduce them as evidence in this case will be easier in California. Nor does Kefurt's attempt to center his complaint around Las Vegas's National Automotive Dealer Association Expo persuade me that this action should stay here. None of the alleged events took place at that Expo—it merely served as a catalyst for the parties' disagreements about Bremach's viability.

The defendants have shown that the bulk of relevant evidence and witnesses are located in California's Central District. Even Kefurt acknowledges that he conducted business with Hoogenraad in California and that the physical location of the display vehicles and other items are in California. And Kefurt's insistence that he doesn't know many of the California witnesses that the defendants list doesn't negate the defendants' assurances of their importance, and in reply Hoogenraad attaches a declaration explaining the connections that most of those witnesses have to this case.[43] Regardless, Kefurt doesn't name any potential witnesses of his own that are located in Nevada and would be outside of the Central District's subpoena power. So, because the defendants have shown that, on balance, this action belongs to California, I grant their motion and transfer this case.

## Conclusion

IT IS THEREFORE ORDERED that Miroslav Kefurt's motion to unfreeze the U.S. Bank account for Bremach, Inc. **[ECF No. 28] is DENIED**.

---

[43] ECF No. 35-3 at ¶¶ 7–17.

IT IS FURTHER ORDERED that Reinier Hoogenraad and Benjamin Montgomery's motion to transfer venue **[ECF No. 33] is GRANTED. The Clerk of the Court is instructed to TRANSFER this case** to the United States District Court for the Central District of California **and CLOSE THIS CASE**.

_____
U.S. District Judge Jennifer A. Dorsey
April 11, 2024